[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action commenced by the plaintiff wife on July 18, 2000 seeking a dissolution of marriage on the grounds of irretrievable breakdown. She also claims an equitable division or assignment of the family property and restoration of her maiden name, Suzanne Marie Listro. On July 31, 2000 the defendant husband appeared by counsel. A trial on the complaint was held on June 7, 8 and 11, 2001. Both parties testified extensively and the court received 21 exhibits. From the testimony and evidence presented as well as the Trial Stipulations entered into by the parties, and after carefully assessing the credibility of the parties, the court finds the following to have been proven.
The parties were intermarried on November 7, 1998 in Woodstock, Connecticut. There are no minor children issue of this marriage and no minor children have been born to the wife since the date of the marriage. Neither the state of Connecticut nor any town thereof has contributed to the support and maintenance of either party. The plaintiff has resided continuously in this state for more than twelve months immediately prior to the date of the complaint. The court finds that it has jurisdiction over the parties and the marriage. The court finds that the allegations of the complaint have been proven true and that the marriage has broken down irretrievably.
The wife is 35 years old and the husband is 49. Both are employed by the state Department of Children and Families, the wife having worked there for five and one-half years and the husband, for eleven years. They make comparable salaries, the wife claiming gross income of $1,020 per week and the husband claiming gross income of $1,085 per week. They both have over $11,000 in deferred compensation plans. The husband's pension is vested while the wife's is not. This was the wife's first marriage and the husband's third.
The parties were engaged in February 1997 and soon discussed purchasing land near the wife's father's home for the purpose of building their own home. In August 1997, the wife's father entered into a real estate contract for the purchase of a piece of raw land in Mansfield Center adjoining his land for $40,000. He took title to that property in September 1997. As part of the closing of that purchase, the wife's father paid $517 in closing costs as a gift to the plaintiff As purchased, the land was not buildable and needed subdivision as well as other local approvals. The wife's father paid $11,125 for engineering services to obtain such approval. In connection with the closing of the property, the husband contributed $5,000 and the wife contributed $15,000 and the wife's father contributed $20,000, since the wife and the husband were to split the cost of the land with the wife's father. The husband paid the wife an additional $2,500 after the closing on the land. CT Page 7349
In February 1998, the defendant broke off the engagement because he believed that the plaintiff was having an affair. Despite the breakup with the defendant, the plaintiff decided to proceed with the building of the house and in June 1998 signed a construction contract to have the house built.
In April 1998 the defendant obtained legal counsel and demanded that the plaintiff repay him the $7,500 he had contributed to the purchase of the land for the house. In response, the plaintiff repaid to the defendant $2,500 of his contribution to the purchase price of the land.
By warranty deed dated July 21, 1998, the plaintiff's father conveyed to her approximately five and one-half acres of the eight and one-half acres he had purchased, for her to build the house. As part of this conveyance, the plaintiff's father paid $537.50 in closing costs as a gift to the plaintiff. On August 14, 1998 the plaintiff obtained a construction mortgage, solely in her name, in the amount of $127,600 to finance the building of the house. The plaintiff paid application fees and closing costs of $2,100. Construction began in September 1998.
In September 1998 the parties reconciled and were married the following November. They lived together at the defendant's apartment in New Britain until January of 1999 when they moved into the house in Mansfield Center. After the reconciliation, the parties agreed to add air-conditioning to the house and the defendant's mother gave them $3,000 to do so and the plaintiff contributed $4,500 for such purpose.
Shortly after their marriage a number of issues became the subject of disputes between the parties. The defendant had a number of guns and a loaded pistol was kept near their bed which concerned the plaintiff. The defendant also had a Great Dane which attacked the plaintiff's father in June 1999 resulting in his hospitalization. Although the plaintiff also had two dogs, the behavior of the defendant's dog frightened her but the defendant refused to do anything about his dog. The defendant told the plaintiff that "he had known the dog longer than her." The plaintiff also became concerned with the defendant's use of prescription drugs as a result of surgery to his wrist in December 1998 because his behavior began to change and he was unable to sleep and frequently went to walk-in clinics for pain medication. Even after their marriage, the plaintiff paid most of the household expenses and the defendant's inability to account for where he spent his income and his failure to consistently contribute to the joint expenses also became a source of conflict. In August 1999 the parties had an altercation which resulted in the arrest of both parties and they separated. The defendant claimed that he received a broken cheek bone as well as other injuries inflicted by the CT Page 7350 plaintiff during this incident but his testimony in this regard was not credible. As a result, the defendant moved back to his apartment in New Britain. He purchased a stove, refrigerator and a bedroom set. While they were separated the plaintiff continued to pay most of the expenses of the house although the defendant did pay the phone and utilities bills and one full mortgage payment. They also engaged in marriage counseling and took a vacation to St. Martin in February 2000. In April 2000 they reconciled again. The defendant moved back into the house. That same month the plaintiff quit claimed a one-half interest in the house to the defendant. Although the defendant claims that this was the plaintiff's idea, it was the defendant's lawyer who prepared the deed. Less than a month later the plaintiff left the house because of another altercation. Although the defendant denied he assaulted the plaintiff at that time, which she claimed, she left the house she had built because of her fear of the defendant. In total the parties had resided together for a little over eleven months after their marriage and before this action was brought.
On July 31, 2000, the defendant was ordered to pay 50% of the monthly mortgage from August 9, 2000 forward, on or before the twelfth of each month. The plaintiff was to pay all of the other expenses.
On August 9, 2000, after a contested hearing, the defendant was ordered to vacate the Mansfield Center residence by August 12, 2000. From May to August 2000, while the defendant occupied the house, the plaintiff paid the taxes and mortgage. During his sole occupancy, the defendant was out of work and unable to maintain the premises. They were left unclean and the yard unkept. The defendant did not vacate the premises until ordered to do so.
As of the date of the last day of trial on June 11, 2001, the defendant, believing that this matter would be resolved in April when it was first scheduled for trial, had just the day before mailed his share of the May mortgage payment. He had not paid or mailed the June payment due the next day. The defendant seeks to be able to deduct the mortgage interest and taxes his payments represent for the past 4 months in his 2001 tax return.
At the time of the marriage, the defendant owned a 1985 Porsche which he still owns. The plaintiff owned a Neon which she subsequently traded in for a 1997 Aurora financed by a loan taken out jointly by the plaintiff and the defendant, the balance of which is approximately $13,900. The defendant also purchased a 2000 Tiburon which is financed as well by a joint loan, the balance of which is $8,800, and $6,000 from a worker's compensation payment to the defendant. CT Page 7351
The plaintiff paid $300 for an appraisal of the house. The parties agree that the fair market value of the house is $190,000 and that the balance on the mortgage as of April 9, 2001 is approximately $124,200 so that the equity in the home is approximately $65,800. Considering the plaintiff's contributions as well as those of her father to the purchase of the land, the preparation of the land for purposes of building the house, the financing of the mortgage as well as the air conditioning, the plaintiff's contribution to the marital residence is approximately $54,000 not including the payments on the mortgage she has made. The defendant's contribution, including the $3,000 from his mother for the air-conditioning, totals approximately $8,000.
The parties informally agreed in April 2001, when their income taxes were filed, that they would divide any refunds 50-50. The Connecticut refund is $277 and the IRS refund is $2,613.
Conn. Gen. Stat. Section 46b-81 provides that in a dissolution of marriage action "the Superior Court may assign to either the husband or wife all or any part of the estate of the other. In fixing the nature and value of the property, if any, to be assigned, the court. . . . shall consider the length of the marriage, the causes for the . . . dissolution of the marriage . . ., the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income. The court shall also consider the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates." Similar criteria apply to the determination of an award of alimony pursuant to Conn. Gen. Stat. Section 46b-82.
After observing both parties at trial, the court finds that the defendant was not a credible witness and that, based on the credible testimony of the plaintiff, the defendant's behavior was a substantial cause of the breakup of the marriage. The husband did not fully commit to the marriage financially, he was insensitive to the plaintiff's concerns regarding his guns and his dog, and he engaged in physical confrontations with the plaintiff. His behavior after the break-up lends further support to the plaintiff's claims of psychological and physical abuse by the defendant. He refused to vacate the family home without a court order, despite his less than credible testimony that he told the plaintiff that he would be willing to do so. He failed to comply with the court's pendente lite order even to the extent that although he represented in court at the second day of trial that he had the money for the May mortgage payment and knew he had to pay it, he did not pay it then, instead choosing to place it in the mail the day before the last day of trial, almost a month late. CT Page 7352
After taking into consideration the criteria required by the statutes and the application of those criteria to the facts found by the court, the court enters the following orders:
 1. A decree is entered dissolving the marriage of the parties on the grounds of irretrievable breakdown.
 2. This was a very short marriage and the parties have comparable incomes and potential for income. Although at trial each party requested alimony of $1 per year to secure the obligations of each on joint debts, the statutes do not contemplate an award of alimony for such a purpose. In any event, neither party sought alimony in any pleading before the court. Therefore alimony is not awarded to either party.
 3. The marital home was built and substantially financed by the plaintiff and her father. Therefore the defendant shall quit claim his interest in the residence at 260 Stearns Road, Mansfield Center, CT to the plaintiff within fourteen days of the date of this judgment. The plaintiff shall hold the defendant harmless for any liabilities and obligations pertaining to the residence. The plaintiff shall retain the contents of 260 Sterns Road except as noted in Paragraph 4 below.
4. Defendant shall have possession of the "unstarred" items listed on Exhibit J. As to the disputed items listed on Exhibit J, the refrigerator (#3) belonged to the defendant before the marriage and the washer (#4) and dryer (#5) were gifts to the parties by the defendant's mother. Therefore the plaintiff shall transfer possession of these items to the defendant. In lieu of such transfer, the plaintiff, at her option, may pay the defendant a total of $500 for such items within 14 days of this judgment. As to the stove (#6) and the computer (#17) the plaintiff contributed substantially to their purchase so they shall be the property of the plaintiff. As to items #23, various tools, and #30, camcorder, there was CT Page 7353 insufficient evidence to determine where these items are located or by whom they are possessed so the court makes no orders regarding these items. The plaintiff shall retain the remaining contents of 260 Steams. Road except any items of personal clothing belonging to the defendant. The defendant shall retain the contents of his apartment at 186 Fairview Street, New Britain. Any item awarded to the defendant as noted above shall be removed from the property at 260 Steams Road within 14 days of this judgment at a time agreed upon by the parties. The wife shall be allowed a person of her choice to be present at the time of the removal. If any items remain on the property after that time, ownership of such items shall pass to the plaintiff and she may dispose of them.
 5. The plaintiff shall be responsible for the debts and liabilities shown on her financial affidavit except for the loan on the 2000 Hyundai Tiburon which shall be the sole responsibility of the defendant. The defendant shall hold the plaintiff harmless thereon. The defendant shall remove the plaintiff's name from the loan financing the car within 30 days of the date of this judgment. The plaintiff shall transfer to the defendant any right, title or interest she may have in the 2000 Hyundai Tiburon within 30 days of this judgment.
 6. The defendant shall be responsible for the debts and liabilities shown on his financial affidavit except for the loan on the 1997 Oldsmobile Aurora which shall be the sole responsibility of the plaintiff. The plaintiff shall hold the defendant harmless thereon. The plaintiff shall remove the defendant's name from the loan financing the car within 30 days of the date of this judgment. The defendant shall transfer to the plaintiff any right, title or interest he may have in the 1997 Oldsmobile Aurora within 30 days of this judgment.
7. Except as ordered in paragraphs 4 and 5 above each party is assigned all personal property and assets listed on their financial affidavits. CT Page 7354
 8. In light of the parties agreement to split the 2000 income tax refunds, and the defendant's position that he relied on such representation in not filing separately, the 2000 state income tax refund in the amount of $277 and the IRS income tax refund in the amount of $2,613 shall be split evenly between the parties.
 9. The defendant contributed approximately $8,000 to the house for it's initial purchase. There was also charged more than $4,000 on the plaintiff's charge cards for trips by the couple as well as casino jaunts by the defendant although the defendant reimbursed the plaintiff $1,100 for one of the joint trips. In addition, during the term of the marriage the defendant paid very little toward the mortgage on the property and therefor contributed very little to the increase in equity in the property. Although he paid one-half of the mortgage pursuant to the pendente orders for approximately nine months, this is offset by the four months that the plaintiff paid the full mortgage while the house was solely occupied by the defendant from May to August 2000. In addition, he failed to maintain the property while he occupied it. Therefore the court finds that the defendant did not contribute substantially to the acquisition, perseveration or appreciation in value of the house and therefore is not entitled to share substantially in the equity in the house. Therefore the plaintiff is ordered to pay the defendant $3,000 within 60 days as his share of the equity in the marital residence.
 10. The plaintiff wife shall be entitled to the deduction for all interest paid on the mortgage and taxes for the 2001 income tax year to the extent permitted by law.
11. A finding of contempt shall enter against the defendant for his willful failure to pay his portion of the May mortgage in a timely manner. The plaintiff is awarded $250 in counsel fees payable by the defendant within 14 days of this judgment. CT Page 7355
12. The plaintiffs wife's birth name of Suzanne Marie Listro is restored.
SCHOLL, Judge.